# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-169

**LAWRENCE FRANKS AND ROBBIE FRANKS**

**VERSUS**

**STATE NATIONAL INSURANCE COMPANY, ET AL.**

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 77,499 A
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**James Thomas Rivera**
**Scofield & Rivera, LLC**
**P. O. Box 4422**
**Lafayette, LA 70502**
**(337) 235-5353**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
>    **State National Insurance Company**
>    **Reliant On Call, LLC**
>    **Reliant Transportation, LLC**

**Derrick G. Earles**
**Laborde Earles Law Firm**
**1901 Kaliste Saloom Road**
**Lafayette, LA 70508**
**(337) 408-0513**
**COUNSEL FOR PLAINTIFFS/APPELLEES**
>    **Robbie Dru Franks, Individually, and as Administratix of the Estate of**
>    **Lawrence Lee Franks**

**SAVOIE, Judge.**

Defendant State National Insurance Company "State National" appeals the trial court's judgment rendered in favor of Plaintiffs. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an auto accident that occurred on East Main Street in Ville Platte, Louisiana, on September 13, 2017. At the time of the accident, Lawrence Franks was in a wheelchair, and he was being transported in a medical van from Rapides General Medical Center in Alexandria, Louisiana, to a rehabilitation hospital in Ville Platte, Louisiana, following a stroke he had on September 11, 2017. The van was being driven by Larry Frank, who was acting within the course and scope of his employment with Reliant Transportation, LLC and/or Reliant On Call, LLC. Larry Frank, Reliant Transportation, and Reliant On Call are all insured under a policy issued by State National Insurance Company.

Following the accident, Mr. Franks and his wife Robbie ("Plaintiffs") filed suit against Larry Frank, as well as State National, Reliant On Call, and Reliant Transportation, LLC ("Defendants"). According to Plaintiffs, the accident occurred as Defendant Larry Frank was travelling in the right lane on East Main Street, changed lanes, and collided with a vehicle driven by Kenneth O'Connor in the left lane of East Main Street. Mr. O'Connor is not a party to these proceedings.

Plaintiffs contend that, as a result of the accident, Mr. Franks suffered serious injuries requiring two separate neck operations that resulted in in a seven-level fusion of his cervical spine. Plaintiffs further contend that Mr. Franks' inability to move his neck following his surgeries caused balance issues, and that he sustained further injury in November 2019 when he fell over nine feet into a dumpster.

A jury trial was originally set for September 8, 2020. On September 3, 2020, Defendants moved to continue the trial because, four days before trial, Plaintiffs submitted voluminous medical records from Rapides General Medical Center ("Rapides") that had not previously been produced, as well as a revised medical summary with an additional $242,490.02 in claimed medical expenses. According to Defendants, this was the first time they were put on notice of Plaintiffs' intent to relate treatment for the November 2019 fall to the auto accident at issue. The motion for continuance was granted, and trial was reset to January 11, 2021.

On September 16, 2020, Plaintiffs filed a motion seeking to limit discovery. They argued that the case had been pending for over two years, discovery deadlines had long-passed, Defendants had not retained any experts or noticed any discovery depositions of Mr. Franks' treating physicians, and all treating physicians, with one exception, had given trial testimony. The trial court granted Plaintiffs' motion and permitted Defendants to take the depositions of only the physicians who treated Mr. Franks at Rapides after the November 2019 fall, but otherwise prohibited the parties from re-deposing any other witnesses or designating any additional witnesses or experts. The trial court further prohibited Defendants from obtaining a defense medical examination. Defendants then filed an emergency writ application with this court, which was denied. *Franks v. State National Ins. Co., et. al.*, 20-575 (La.App. 3 Cir. 1/6/21).

On November 11, 2020, Plaintiffs filed a Motion in Limine seeking to exclude generally any evidence and/or argument regarding the stroke Mr. Franks had on September 11, 2017, and/or any stroke Mr. Franks had after the accident, as well as the testimony of Dr. Mohamad Hajmurad, who is a neurologist. The trial court denied Plaintiffs' motion with respect to Mr. Franks' strokes, noting the relevancy

to Mr. Franks' claims. It also denied the motion with respect to Dr. Hajmurad, but stated,

> Dr. Hajmurad testified only as to the "general effects" of Mr. Franks' subsequent stroke(s), and he deferred any opinion as to any causation or conexity[sic] to any subsequent fall, including the 2019 "dumpster fall", and as such will be subject to any valid objection to same during the trial on the merits herein.

Trial was set to begin on January 11, 2021. During voire dire, the trial court received notice of an order issued by the Louisiana Supreme Court that prohibited jury trials prior to March 1, 2021, due to Covid-19. The trial court denied Defendants' motion to continue because trial was already underway.

Following Plaintiffs' presentation of their case, Plaintiffs objected to various exhibits Defendants introduced into evidence, including the trial depositions of Dr. Hajmurad, Dr. Jeremy Timor, Dr. Angela Adams, Dr. Praveen Budde, Dr. Christina Pevey, and P.A. Rachael Smith Raines. The trial court sustained Plaintiffs' objections and refused to allow certain deposition testimony from these providers. As a result of this ruling, Dr. Hajmurad's deposition testimony was excluded in its entirety, and the depositions of the other aforementioned medical providers were redacted.

Following trial, the jury returned a verdict concluding that Defendant Larry Frank was solely responsible for causing the accident. The jury then awarded Plaintiff Mr. Franks with a total of $566,421.49 in past and future medical expenses and $2,750,000.00 in past and future general damages. The jury also awarded Mrs. Franks with $500,000.00 for loss of consortium.

A judgment was signed on March 12, 2021, in favor of Mr. and Mrs. Franks and against Defendants in the total amount awarded by the jury, plus legal interest and court costs. Defendants thereafter filed a Motion for Judgment Not

Withstanding the Verdict and/or New Trial and/or Remittitur because the judgment cast State National with damages in an amount that exceeded its remaining policy limits. A hearing was held on May 4, 2021, and the trial court denied the motion. On June 1, 2021, this court granted Defendants' writ application and remanded the matter with instructions to recognize that State National's liability did not exceed the limits of the policy at issue. *Franks v. State National Ins. Co.*, 21-323 (La.App. 3 Cir. 6/1/21).

Accordingly, on June 4, 2021, the trial court signed a second judgment, and Defendants submitted a notice of suspensive appeal on June 16, 2021. Plaintiffs thereafter sought to dismiss Defendants' appeal as untimely, arguing that the change in the phraseology of the judgment did not affect the delay for seeking an appeal. In response, Defendants informed the court that Mr. Franks passed away on March 24, 2021, and argued that the June 4, 2021 judgment was null due to Mr. Franks' death prior to the judgment. This court agreed and dismissed the appeal without prejudice. *Franks v. State Nat'l Ins. Co.,* 21-484 (La.App. 3 Cir. 9/8/21) (unpublished opinion).

On September 17, 2021, Defendants filed a Motion to Re-open Evidence in the trial court based on Mr. Franks' death and its alleged impact on future damages.

On September 27, 2021, Plaintiffs filed an ex-parte motion and obtained an order substituting in Mr. Franks' place Mrs. Franks as the provisional administrator of the Estate of Lawrence Franks. On September 29, 2021, the trial court signed an amended judgment reflecting the substitution of parties; however, this was done before there was a hearing on Defendants' motion to re-open evidence.

The September 29, 2021 judgment was rendered against all Defendants except State National in the amount of the jury verdict, as well as against State National "in

an amount equal to the remaining limits of its policy, plus any additional interest, costs, or expenses as per the applicable policy provisions."

Defendants thereafter submitted a Motion for Judgment Notwithstanding the Verdict ("JNOV") and/or New Trial and/or Remittitur. They argued that the September 29, 2021 judgment was premature because Defendants' motions were pending, and that a new trial and/or remittitur should be granted for reasons set forth in both their March 19, 2021 motion for new trial and September 17, 2021 motion to reopen evidence. The trial court denied Defendants' motions on December 17, 2021. Defendants thereafter appealed.

Following an August 15, 2022 order from this court that suspended the appeal and required the trial court to issue an amended judgment with proper decretal language, the trial court rendered an Amended Judgment on August 24, 2022. The judgment was rendered in favor of Plaintiffs and against Larry Frank, Reliant Transportation, and Reliant On Call, in the total amount of $3,816,421.49 plus legal interest, in accordance with the jury's verdict. The amended judgment was further rendered in favor of Plaintiffs and against State National in the amount of $975,561.36, and states that the payment of this amount reduces the amount owed by the other Defendants. Following this court's receipt of the amended judgment, Defendants' appeal was placed back on this court's docket.

On October 24, 2022, Defendants-Appellants filed with this court a Motion to Voluntarily Dismiss the Devolutive Appeal Filed on Behalf of Larry Frank, Reliant on Call, LLC, and Reliant Transportation, LLC, noting that a settlement had taken place, and an order was signed granting the relief sought. However, the motion and

order did not affect Defendant State National's appeal, which we now consider.

State National asserts the following assignments of error:[1]

(1) The [Trial] Court erred in denying Defendants' Motion to Re-Open Evidence and/or Motion for Judgment Notwithstanding the Verdict and/or New Trial and/or Remittitur regarding the death of Lawrence Franks prior to the signing of a valid judgment and refusing to reduce the amount of Plaintiffs' future damages due to do the death of Lawrence Franks.

(2) The [Trial] Court erred in assessing the credibility of witnesses through comments used in front of the Jury.

(3) The [Trial] Court erred in denying Defendants the ability to conduct discovery and retain experts regarding causation of injuries between the original October 2020 trial date and the January 11, 2021 trial date.

(4) The [Trial] Court erred in excluding the testimony of Dr. Mohammed Hajmurad and limiting the testimony of Dr. Angela Adams, Dr. Praveen Budde, Dr. Christina Peevey and P.A. Rachael Smith Raines regarding Plaintiff's history of strokes subsequent to the September 13, 2017 accident.

(5) The [Trial] Court erred by allowing Plaintiffs' Life Care Planner and Economist to testify outside the bounds of their reports regarding new opinions not previously provided to Defendants.

(6) The Jury abused its discretion by awarding $500,000.00 to Robbie Franks for loss of consortium damages.

(7) The Jury abused its discretion by awarding Lawrence Franks $2,750,000.00 in general past and future general damages.

(8) The [Trial] Court erred in denying Defendants' request for a continuance in light of the [Louisiana] Supreme Court Order suspending all jury trials.

*Motions to Re-Open Evidence, for JNOV, New Trial, and/or Remittitur*

In its first assignment of error, State National argues that the trial court erred

in denying its motion to re-open evidence and/or motion for new trial because Mr.

---

[1] An appellant brief was filed on behalf of all Defendants collectively; however, we will consider it only with respect to State National, given the dismissal of the remaining Defendants' appeal.

Franks died after the jury rendered its verdict, but before a valid, final judgment was rendered by the trial court. State National argues that the jury awarded a substantial amount of future damages to Mr. Franks based on a fifteen-year life expectancy predicted by Plaintiffs' expert witness, and therefore, the trial court should have reopened the case or granted a new trial to allow evidence concerning Mr. Franks' death, which would have affected the award of future damages.

In response, Plaintiffs argue that the trial court was not erroneous in denying Defendants' motions given that the jury rendered a verdict on January 15, 2021, a judgment memorializing the verdict was signed by the trial court on March 12, 2021, and Mr. Franks passed away thereafter on March 20, 2021. Plaintiffs argue that Mr. Franks' death following the rendering of a jury verdict should not affect the appropriateness of the damages awarded at trial.

Louisiana Code of Civil Procedure Article 1632 sets forth the normal order of trial concerning the parties' argument and presentation of evidence, but it allows the trial court to vary the order "when circumstances so justify."

> The decision whether to reopen case for production of additional evidence rests within discretion of trial court, whose discretion will not be disturbed on appeal unless manifestly erroneous. La.Code Civ.Pro. art. 1632. A trial court should not hesitate to reopen a case for the taking of additional evidence to prevent a miscarriage of justice.

*Whitmore v. Louisiana Hydro-Elec.*, 04-1300, p. 6 (La.App. 3 Cir. 2/2/05), 893 So.2d 961, 965.

In support of its argument that the trial court was erroneous in denying its motions, State National primarily relies on *Oswalt v. State, Department of Transportation and Development*, 93-850 (La.App. 3 Cir. 3/30/94), 640 So.2d 388, *writ denied*, 94-1106 (La. 6/24/94), 641 So.2d 207. *Oswalt* involved a bench trial that concluded with the trial court holding the record open for the submission of

7

additional evidence related to medical damages. The plaintiff subsequently died following the bench trial, but prior to the trial court's rendition of a judgment. In finding that the trial court's judgment denying the defendant's motion to reopen evidence for consideration of plaintiff's death was manifestly erroneous, the *Oswalt* court noted that the new evidence could have been considered by the trial court without unduly delaying the resolution of the case, and the new evidence was directly related to future damages.

However, we find the instant case to be distinguishable from *Oswalt* in that prior to Mr. Franks' death, the submission of evidence was complete, the matter had been submitted to the jury based on the evidence presented, the jury had rendered a verdict based on evidence presented at trial, and the trial court had rendered a judgment in accordance with the jury's verdict. Further, Defendants did not seek to reopen evidence until September 17, 2021, after the trial court's initial judgment had been amended to reflect the extent of State National's liability and after that judgment was vacated by this court on appeal. Unlike in *Oswalt*, reopening this case to allow evidence of Mr. Franks' death, which did not exist at the time of trial or when the jury verdict was rendered, would significantly delay the resolution of this case.

Similarly, Defendants' reliance on *Bankston v. Bankston*, 97-2509 (La.App. 1 Cir. 11/6/98), 722 So.2d 46, and *Antley v. Brantly,* 28,049 (La.App. 2 Cir. 2/28/96), 669 So.2d 685, is misplaced. Those cases are both distinguishable in that they also involved the trial court leaving the record open and/or taking the matter under advisement after a bench trial, and where the evidence subject to the motion to re-open came into existence in the meantime and prior to the trial court's judgment.

8

In the instant case, however, a verdict had been rendered on the evidence presented during trial, and Mr. Franks was alive at that time. Therefore, we find no abuse of discretion on the part of the trial court in denying Defendants' motion to re-open evidence.

With respect to Defendants' motion for new trial in light of Mr. Franks' subsequent death, La.Code Civ.P. art. 1972(2) states that a new trial shall be granted "[w]hen the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during trial." "A new trial may be granted on the basis of newly discovered evidence, but that evidence must have existed at the time of trial. *Labruzzo v. Employers Ins. of Wausau*, 521 So.2d 515 (La.App. 4th Cir.), *writ denied*, 523 So.2d 1342 (La.1988)." *Canady v. Pynes Chrysler, Inc.*, 617 So.2d 566, 570 (La.App. 3 Cir. 1993). Further, La.Code Civ.P. art. 1973 gives the trial court discretion to grant a new trial "if there is good ground therefor, except as otherwise provided by law." The grant or denial of a motion for new trial under either article is reviewed for an abuse of discretion. *Smith v. Alliance Compressors*, 05-855 (La.App. 3 Cir. 2/1/06), 922 So.2d 674.

Here, Mr. Franks was alive at the time of trial, when the jury rendered its verdict, and when the trial court initially rendered judgment in accordance with the jury's verdict. Therefore, evidence of Mr. Franks' death did not exist at the time of trial, and a new trial under La.Code Civ.P. art. 1972 was not warranted based on that evidence. Further, we find no abuse of discretion on the part of the trial court in denying a motion for new trial under discretionary grounds contemplated by La.Code Civ.P. art. 1973 on the basis of Mr. Franks' death after the jury rendered its verdict. We similarly conclude that the trial court did not err in denying Defendants' motions for JNOV and/or remittitur based on Mr. Franks' post-trial death.

*Comments to the Jury*

In its second assignment of error, State National takes issue with various comments the trial judge made during trial. Specifically, State National argues that the trial judge impermissibly referred to one of Mr. Franks' treating physicians, Dr. George Williams, as a "good doctor" with "important" testimony, and that the trial judge implied that he was regularly accepted as an expert witness. State National also argues that the trial judge impermissibly suggested that there were two police officers at the scene of the accident even though there was conflicting testimony, and that the trial judge impermissibly commented on Mr. O'Connor's credibility when the judge suggested that Mr. O'Connor did not want to get paid for his presence at trial but just wanted to return to work. Finally, State National further contends that the trial judge improperly provided the jury with a description of various photographs that were submitted into evidence during the other driver's testimony, rather than allowing the photos to speak for themselves.

While State National states that the trial judge did not maliciously make any such comments, and likely did not intend for any comments to be prejudicial, it suggests that the comments unfairly prejudiced Defendants and were made in violation of La.Code Civ.P. art. 1791.

> This article is intended to circumscribe any indication by the trial judge in the presence of the jury of any opinion on the factual merits of a party's claim. However, even if the trial judge violates the prohibition against commentary on the evidence that does not automatically require reversal (or mistrial). That drastic result is only mandated when a review of the record as a whole reveals that the improper comments made by the trial judge were prejudicial to the extent that the complaining party was deprived of a fair trial.

*Kirby v. State ex rel. Louisiana State Univ. Bd. Of Sup'rs.*, 14-17, p. 16 (La.App. 1 Cir. 11/7/14), 174 So.3d 1, 12.

State National further argues that, while it did not enter any objections to any comments made by the trial judge during trial, there was nothing that an objection could have cured. However, in *Johnson v. H.W. Parson Motors, Inc.*, 231 So.2d 73, 78-79 (La.App.1 Cir. 1970), the court stated as follows with respect to counsel's failure to object to comments made by the trial judge during trial:

> no effort was made by counsel for appellants either at that stage of the trial or in conjunction with the trial court's charging of the jury to bring this matter to the attention of the trial court so that the jury could be expressly admonished to disregard the comment. We feel counsel for appellants should have made his objection before the trial court or if he felt the statement so prejudicial, he should have moved for a mistrial; instead, counsel for appellants was willing to permit the jury to consider the case and only after appellants have received an unfavorable verdict and judgment is this error urged as a basis for reversal and a new trial. We feel under the circumstances appellants waived the objection and cannot now be heard to complain[.]

See also, *Kirby* 174 So.3d 1, where the court reached a similar conclusion.

We likewise conclude that because State National failed to assert any objections to any comments made by the trial court prior to the verdict being rendered, State National has waived any such objections and cannot assert them for the first time on appeal.

*Limitation of Discovery*

In its third assignment of error, State National argues that the trial court erred in granting Plaintiffs' September 16, 2020 motion and limiting discovery only to allow additional depositions of medical providers who treated Mr. Franks at Rapides following the November 2019 fall and in preventing Defendants from obtaining any experts or a defense medical exam. State National contends that prior to Plaintiffs' September 3, 2020 submission of medical records from Rapides and an updated medical expense summary claiming over $200,000 in additional past medical expenses related to the November 2019 fall, Defendants were unaware that Plaintiffs

11

intended to relate that fall to the auto accident at issue. State National argues that it should have been permitted to obtain a medical causation expert to show that Mr. Franks' history of strokes, rather than the accident at issue and subsequent cervical surgeries, caused problems with imbalance that resulted in the November 2019 fall.

In response, Plaintiffs note that while the trial court exercised its discretion in granting Defendants' motion to continue the September 8, 2020 trial following Plaintiffs' submission of the additional medical records from Rapides, the motion was granted only to allow time for Defendants to review those records. Otherwise, the case had been pending for over two years, discovery deadlines had long-passed, and Defendants had not retained any experts; therefore, it was appropriate to limit additional discovery.

Plaintiffs further assert that Defendants had prior knowledge of Plaintiffs' claims relating all of Mr. Franks' falls to the instant accident, including the November 2019 fall. They note that Defendants were in possession of records documenting the November 2019 fall and its serious nature, as well as Mr. Franks' need for future surgery. In addition, Dr. Weir related all of Mr. Franks' falls to the condition of his neck, and also Defendants' counsel specifically asked Dr. Gregory Dowd during his September 2, 2020 deposition whether he treated Mr. Franks in connection with the November 2019 fall. Therefore, according to Plaintiffs, with the exercise of due diligence, Defendants could have sought to conduct additional discovery regarding Plaintiffs' falls, but they failed to do so. Rather, Defendants failed to seek updated medical records, ask for a defense medical exam, request any depositions of any of Mr. Franks' medical providers, including Dr. Williams, who performed surgery and recommended additional surgery, or otherwise conduct any medical discovery.

Plaintiffs further note in their appellee brief that the jury rejected their argument that the November 2019 fall was related to the accident and did not award medical expenses claimed with respect thereto.

"The trial court has reasonable discretion to refuse or limit discovery of matters that are not relevant to the issues, are unreasonably vexatious, or are tardily sought and which might delay trial." *Ward v. Tenneco Oil*, 564 So.2d 814, 821-822 (La.App. 3 Cir. 1990). Given the procedural history of the case and Defendants' failure to conduct medical discovery prior to the initial discovery deadlines, we find no abuse of discretion on the part of the trial court in limiting discovery in connection with Plaintiffs' September 16, 2020 motion.

*Limitation and/or Exclusion of Medical Provider Testimony*

In its fourth assignment of error, State National argues that the trial court erred in limiting the testimony of Dr. Adams, Dr. Budde, Dr. Pevey, and P.A. Raines, to exclude their testimony concerning Mr. Franks' stroke history and the effect of any strokes on Mr. Franks' physical condition. It similarly argues that the trial court erred in excluding the entire deposition testimony of Dr. Mohmmad Hajmurad, the majority of which involved his opinion regarding Mr. Franks' stroke history and the effects of strokes.

While the trial court noted that Plaintiffs had submitted evidence indicating that Mr. Franks suffered a stroke on September 11, 2017, as well as in 2019 prior to the November 2019 fall, and that those strokes were not disputed, the trial court concluded that the medical providers at issue relied upon by Defendants were not qualified to testify as to whether Mr. Franks had any additional strokes or the effects of any strokes on Mr. Franks' condition, and/or that the providers' testimony was impermissibly hypothetical and speculative.

"[T]he trial court has vast discretion in deciding the admissibility of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." *Whitehead v. Kansas City S. Ry. Co.*, 99-896, p. 11 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, 219, *writ denied*, 00-209 (La. 4/7/00), 759 So.2d 767.

We first note that, with respect to Dr. Adams' testimony, the unredacted testimony does not appear to have been proffered as it is not in the record. "[I]f a party fails to proffer excluded evidence, an appellate court cannot analyze it and its admissibility, and that party is precluded from complaining of the excluded testimony."
*Id.* at 218-219 (internal citations omitted). In addition, State National's appellant brief fails to present any argument pertaining to Dr. Adams' testimony or otherwise indicate what the content of the excluded testimony was. Therefore, we will not consider this assignment of error as to Dr. Adams. Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4).[2]

With respect to the excluded deposition testimony from P.A. Raines, Dr. Budde, Dr. Pevey, and Dr. Hajmurad, which was proffered, State National contends that this testimony should have been admitted in support of its argument that Mr. Franks' balance issues were caused by his stroke history, rather than the subject accident and resulting neck surgeries.

"Expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge." *Cannet v. Franklynn Pest Control Co, Inc.*, 08-56, p. 10 (La. App. 5 Cir. 4/29/08), 985 So.2d 270, 276. State

---

[2] We further note that while State National mentions in passing in its brief that the testimony of Dr. Jeremy Timor was limited and/or excluded, no specific argument is made with respect to Dr. Timor's testimony and the record does not contain any proffered testimony from Dr. Timor. Therefore, we will not address this issue.

National states that even though it could not retain its own expert to establish that the balance issues leading to the November 2019 fall were caused by Mr. Franks' history of strokes, it was able to obtain deposition testimony from Mr. Franks' own treatment providers regarding the common effects of strokes, and that testimony should have been admitted.

State National proffered the unredacted testimony of Rachel Raines, a physician assistant for the trauma and critical care specialist group at Rapides. She was not tendered as an expert in any field. She testified that she treated Mr. Franks on December 2, 2019, and December 3, 2019, in connection with a fall that he had December 1, 2019. There is no indication that P.A. Raines treated Mr. Franks in connection with any stroke or any other fall. In addition, she testified that she was not a neurologist, did not have any experience specifically treating stroke patients, and that she would defer to the opinions of Mr. Franks' treating neurologist who suggested that Mr. Franks' stability and balance problems were not related to a stroke.

Because P.A. Raines was not tendered as a medical expert, she was not qualified to provide an expert opinion concerning whether Mr. Franks suffered any strokes and/or the effects of any prior stroke on Mr. Franks' physical condition. Therefore, we find that the trial court did not err in excluding her proffered testimony suggesting that Mr. Franks' history of prior strokes resulted in gait problems and contributed to a history of falls.

State National also proffered the unredacted testimony of Dr. Budde, who treated Mr. Franks at Rapides on July 12, 2020. This was the only time he treated Mr. Franks, and he did not independently remember him. Dr. Budde was tendered as an expert in hospital medicine without objection. According to Dr. Budde's

proffered testimony, Mr. Franks had initially presented to an outlying facility with complaints of left-sided weakness and slurred speech, and then was transferred to the ER at Rapides. After reviewing Mr. Franks' medical history and symptoms, Dr. Budde admitted Mr. Franks to the hospital and ordered a neurological evaluation due to his "suspicion" that Mr. Franks had had a stroke. However, Dr. Budde also testified that if Mr. Franks' treating neurologist's opinion was that Mr. Franks had balance problems because he was unable to fully move his neck following his surgeries, he would have no problem with that opinion. Because Dr. Budde is not an expert neurologist and deferred to the opinions of Mr. Franks' treating neurologist, we find no error in the trial court's ruling limiting Dr. Budde's testimony.

Dr. Pevey also examined Mr. Franks on June 12, 2020. She was tendered as an expert "hospitalist" without objection. Her proffered testimony indicates that she treated Mr. Franks for "stroke like symptoms," that his symptoms were improving, and that his stroke workup was pending at the time she treated him. She also testified that following the stroke evaluation, it was determined that Mr. Franks had not had a stroke. Dr. Pevey also indicated that she had treated Mr. Franks for a prior transient ischemic stroke; however, she did not provide a timeframe for this treatment or any indication that this was a stroke in addition to the 2017 and 2019 strokes identified by Plaintiffs. Dr. Pevey further testified that she would defer to Mr. Franks' treating neurologist's opinions regarding the effect of any stroke on Mr. Franks' physical condition because she was not trained in neurology. Because Dr. Pevey deferred to the opinions of the treating neurologist, we find no error in the trial court's limitation of Dr. Pevey's testimony.

Dr. Hajmurad was tendered as an expert in neurology. He testified that he treated Mr. Franks on September 11, 2017, following his stroke. He also conducted

16

a neurological examination of Mr. Franks on March 5, 2000, and then saw Mr. Franks at Rapides on June 12, 2020. During Dr. Hajmurad's October 28, 2020 deposition, which State National argues was improperly excluded from evidence, Defendants' counsel attempted to elicit expert opinion testimony from Dr. Hajmurad relating Mr. Franks' imbalance issues to Mr. Franks' stroke history. However, after learning for the first time during his deposition that Mr. Franks had had two prior cervical surgeries resulting in a seven-level fusion , and that he was being treated by a neurologist, Dr. Weir, for balance issues, Dr. Hajmurad refused to provide a causation opinion; rather, he deferred to Dr. Weir's opinion concerning the cause of Mr. Franks' balance issues. While Dr. Hajmurad did testify generally concerning hypothetical or possible effects of strokes on a person's physical condition and/or life expectancy prior to being informed of Mr. Franks' cervical surgeries, he did not provide, and in fact refused to provide, any medical causation opinion as to Mr. Franks, his condition, or the accident at issue. Therefore, we find no error in the trial court's decision to exclude Dr. Hajmurad's deposition from evidence.

*Testimony of Plaintiffs' Life Care Planner and Economist*

In its fifth assignment of error, State National suggests that the trial court erred in allowing Dr. Shelley Savant and Dr. Stephen Caples to testify "beyond their brief narrative of opinions." Dr. Savant was accepted at trial as an expert in the field of neurology, psychiatry, and life care planning. She explained that she was asked to perform a medical evaluation of Mr. Franks and then put together a life care plan for future medical care necessitated by his injuries sustained in the auto accident based upon a fifteen-year life expectancy, which she deemed to be appropriate for Mr. Franks. She testified that she prepared a life care plan dated December 2019.

State National argues that Dr. Savant should not have been permitted to testify inconsistently with respect to the cost of anticipated Botox injections reflected in the 2019 life care plan. Dr. Savant testified that when she prepared the 2019 life care plan, prior to an April 2020 trial date, Mr. Franks had not yet undergone any Botox injections. However, trial was ultimately continued to January 2021 in the midst of the Covid-19 pandemic, and, in the meantime, Dr. Weir administered a Botox injection to Mr. Franks in October 2020. Dr. Savant testified at trial that she received and reviewed Dr. Weir's records from that date prior to trial, and, in accordance therewith, determined that EMG-guided injections, rather than the non-EMG guided injections reflected in the 2019 life care plan, were necessary to determine the proper location for the injections. She testified that updating the price to include EMG-guided injections created an $8,000.00 difference from the 2019 life care plan.

On appeal, State National argues that Dr. Savant should not have been permitted to deviate from the estimated cost of future Botox injections provided in her 2019 Life Care Plan. In response, Plaintiffs note that the trial court did not order the parties to produce an expert report as contemplated by La.Code Civ.P. art. 1425, but rather required only a "brief narrative" of the opinions to be provided, and the report provided put State National on notice that Dr. Savant would testify as to future medical expenses. Plaintiffs further note that the difference between the 2019 price and the updated price is *de minimis* and does not create reversible error. We agree with Plaintiffs and find no error in the trial court's ruling as to Dr. Savant's testimony.

Dr. Caples was admitted as an expert economist. He explained that he was tasked with providing the present value of the future medical costs testified to by Dr. Savant. Dr. Caples testified that his initial report was prepared March 31, 2020, wherein he determined that total past medical expenses, plus the cost of the

18

recommended surgery, and the future costs shown in Dr. Savant's life care plan was $824,651.00.

Dr. Caples then went on to testify, over objection, concerning the cost of additional treatment that Mr. Franks incurred in connection with the November 2019 fall, which was not included in his March 2020 report. He testified that including these expenses increased the total of past and projected medical costs to $1,125,235.00, which included $652,468.00 in past medical expenses, as well as the discounted value of future medical expenses Dr. Savant identified in the life care plan and modified at trial.

State National argues on appeal that Dr. Caples should not have been permitted to testify as to expenses related to the November 2019 fall since they were not included in his report. In response, Plaintiffs again note that the trial court did not order the parties to produce an expert report in accordance with La.Code Civ.P. art. 1425, and that a brief narrative of Dr. Caples' testimony put Defendants on notice that he would be testifying as to past and future medical expenses. Plaintiffs further note that while they sought $652,468.00 in past medical expenses and $475,767.00 in future medical expenses as determined by Dr. Caples, they were only awarded $377,469.49 in past medical expenses and $188,952 in future medical expenses. Therefore, according to Plaintiffs, the trial court did not commit reversable error in allowing Dr. Caples to testify as to the expenses related to the November 2019 fall as the jury did not award costs associated therewith. We agree with Plaintiffs and find that this assignment of error lacks merit.

*Request for Continuance*

State National also argues that the trial court abused its discretion in denying its motion to continue trial given the Louisiana Supreme Court's order suspending

all jury trials. It states that because of the trial court's ruling, "there is high potential

jury frustration and bias occurred in its verdict."

> "[A] continuance may be granted in any case if there is good ground therefor." La.Code Civ.P. art. 1601. The trial court has great discretion in granting or denying a motion for a continuance, and denial of a continuance will not be disturbed on appeal unless the trial court is shown to have abused its discretion. *Jackson v. Royal Ins. Co.*, 97-723 (La.App. 3 Cir.12/17/97), 704 So.2d 424. Whether a trial court should grant or deny a continuance depends on the particular facts of each case. Some factors to consider are diligence, good faith, and reasonable grounds. *Demopulos v. Jackson*, 33,560 (La.App. 2 Cir. 6/21/00), 765 So.2d 480. Fairness to both parties and the need for orderly administration of justice are additional considerations in deciding whether to grant or deny a continuance. *Gilcrease v. Bacarisse*, 26,318 (La.App. 2 Cir. 12/7/94), 647 So.2d 1219, *writ denied*, 95-421 (La. 3/30/95), 651 So.2d 845.

*Ardoin v. Bourgeois,* 04-1663, pp. 2-3 (La.App. 3 Cir. 11/2/05), 916 So.2d 329, 332.

Considering the continuing spread of Covid-19, on January 11, 2021, the

Louisiana Supreme Court issued an order stating, *inter alia*, "No civil or criminal

jury trial shall commence in any Louisiana state court before March 1, 2021. Civil

and criminal jury trials that are in progress as of the date of this Order may continue

to conclusion, in the discretion of the local court."

In the instant matter, voire dire and jury selection began the morning of

January 11, 2021, prior to the supreme court's order. Following jury selection and

the swearing of the jurors, the trial judge stated on the record that it received the

supreme court's order at 11:50 a.m. on January 11, 2021, that he had provided

everyone with a copy, and told everyone immediately

> "because we were at lunch and in the middle of jury venire and discussion . . . . [L]et the record reflect that on 01/11/2021 since this Court wanted to make absolutely sure . . . at about 12:05 . . . p.m. . . . the Court put in a call to the Louisiana Supreme Court . . . and they said basically okay pursuant to that paragraph that . . . we're in progress to continue to the conclusion of the trial. So, I wanted to make sure that not myself . . . or parties involved were violating any of the orders.

Thereafter, Defendants' counsel noted his objection and made an oral motion to continue the trial. Counsel further noted that while he "underst[oo]d it's in [the trial judge's] discretion[,]" it was his appreciation that the trial was going to proceed.

Given that jury selection had begun prior to the supreme court's order, and that the trial judge was informed by the supreme court that trial could proceed, we find no abuse of discretion in the trial court's ruling to move forward with the trial.

*General Damages*

State National also contends on appeal that the jury abused its discretion by making excessive damage awards for loss of consortium and general past and future general damages.

A fact finder has vast discretion in assessing general damages, including loss of consortium, and an award of general damages will not be disturbed on appeal unless there has been a clear abuse of discretion. *Thibodeaux v. Gulgate Constr., LLC*, 18-676 (La.App. 3 Cir. 3/7/19), 270 So.3d 721.

> The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70, 74; *Youn* [*v. Maritime Overseas Corp.*, 623 So.2d [1257, 1261 (La.1993, *cert denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994)]. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Youn*, 623 So.2d at 1260. Reasonable persons frequently disagree about the measure of general damages in a particular case. *Youn*, 623 So.2d at 1261. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. *Id*. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. Prior awards under similar circumstances serve only as a general guide. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for

truly similar injuries. *Id.*; *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La.1993).

*Thibodeaux*, 270 So.3d at 728-729, *quoting Mack v. Wiley*, 07-2344, pp.15-16 (La. App. 1 Cir. 5/2/08), 991 So.2d 479, 490, *writ denied*, 08-1181 (La. 9/19/08), 992 So.2d 932.

The jury awarded Mrs. Franks with $500,000.00 in damages for her loss of consortium. "Loss of consortium includes pecuniary such elements as loss of services and nonpecuniary such components as loss of love, companionship, affection, society, sexual relations, comfort, and solace." *Thibodeaux*, 270 So.3d at 731.

Mrs. Franks testified as to her loving relationship with Mr. Franks for fifty years. She testified that, prior to the accident, they travelled together, enjoyed outdoor activities such as hunting, fishing, swimming, and hiking, and they enjoyed active involvement with their grandchildren on a regular basis. She also testified that, prior to the accident, Mr. Franks assisted with maintaining the house and lawn and keeping up with repairs, and also that they had a fulfilling sexual relationship. However, according to Mrs. Franks, after the accident, she and her husband were no longer able to enjoy the active lifestyle they previously had due to Mr. Franks' injuries and surgeries. Rather, all they could do together was watch television. In addition, Mrs. Franks said that she could not leave Mr. Franks alone, and indicated that at most, she could occasionally leave for an hour to go to the grocery store, but otherwise she was Mr. Franks' continuous caretaker and had to escort him around their home. Mrs. Franks also testified that even though she loved hunting, she could no longer go because she had to take care of Mr. Franks. In addition, she indicated that Mr. Franks could no longer maintain the house or lawn as he did prior to the

accident, and that she now takes care of those tasks. She also said that they have not had a sexual relationship since the accident.

After reviewing the record, there is considerable testimony indicating that Mr. Franks' injuries sustained in the accident caused a significant and permanent change in he and Mrs. Franks' relationship and lifestyle, and we find no abuse of discretion on the part of the jury in the amount of damages it awarded to Mrs. Franks.

State National also argues on appeal that the jury's award of $2,700,000.00 in past and future general damages to Mr. Franks was impermissibly excessive and an abuse of the jury's discretion because, according to State National, the jury failed to take into consideration Mr. Franks' pre-existing conditions and/or his failure to mitigate damages.

We first note that, in accordance with the August 24, 2022 amended judgment, State National's liability in this case was limited to $975,561.36, which is the remaining amount of its policy limits. However, the amount of medical damages awarded to Mr. Franks ($566,421.49), together with Mrs. Franks' loss of consortium damages ($500,000.00) exceeds the amount of the judgment rendered against State National, and those damage awards have hereby been affirmed; therefore, the issue of the general damages award appears to be moot.

Nevertheless, we find no abuse of discretion in the jury's award of general damages. Mr. Franks' orthopedic surgeon, Dr. Williams, was accepted as an expert in the field of orthopedics without objection. He testified that the accident caused Mr. Franks' pre-existing dens fracture in his neck to become unstable; thus, necessitating cervical surgery. Mr. Franks ultimately underwent two separate cervical surgeries, which resulted in the complete fusion of seven levels of his cervical spine. These surgeries limited flexion, extension, and rotation of Mr. Franks'

neck, and, according to Dr. Williams, this limited mobility could potentially affect other discs in the future.

Dr. Williams also testified that even though Mr. Franks had degenerative changes in his cervical spine prior to the accident, there was no evidence indicating that Mr. Franks had any pain or cervical problems before the accident, and he concluded that the cervical surgeries were necessitated by injuries Mr. Franks sustained in the accident. Dr. Williams further testified that Mr. Franks would need another cervical surgery in the future as a result of his condition.

In addition, Dr. Weir, who was Mr. Franks' treating neurologist, was accepted as an expert in neurology without objection. He testified that he treated Mr. Franks for headaches, balance issues, and cervical dystonia, and indicated that Mr. Franks' neck immobility caused severe headaches, pain, and balance issues that would affect Mr. Franks and require treatment for the rest of his life.

Mr. and Mrs. Franks also testified as to the significant effects of Mr. Franks' injuries and surgeries on his daily life. Prior to the accident, Mr. Franks led an active lifestyle that included running, hunting, camping, and playing with his grandchildren. However, after the accident he was no longer able to the things he enjoyed, and he could only watch television.

After reviewing the record and the severity of the injuries Mr. Franks sustained in the accident, and the significant and permanent affects they had on his life, we cannot say that the jury's award of general damages was excessive or otherwise an abuse of its discretion.

## DECREE

For the reasons set forth above, the trial court's judgment is hereby affirmed.

Costs of this appeal are assessed to State National Insurance Company.

**AFFIRMED.**